IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM E. BROWN,
        Plaintiff,              )
                                       )
        vs                            )    Civil Action No. 10-780
                                       )
UNITED STATES STEEL CORPORATION    )
and UNITED STATES STEEL AND           )
CARNEGIE PENSION FUND,               )
        Defendants.             )

MEMORANDUM OPINION AND ORDER

MITCHELL, Magistrate Judge:

        Presently before the Court is the defendants' motion to dismiss the amended complaint or, in the alternative, for summary judgment (Document No. 7). For reasons discussed below, the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) will be denied, but their motion to dismiss pursuant to Fed.R.Civ.P. 12(b), treated as a motion for summary judgment, will be granted.

        The plaintiff, William E. Brown, has filed an amended complaint against defendants United States Steel Corporation ("U.S. Steel") and United States Steel and Carnegie Pension Fund (the "Fund") for alleged violations of the Medicare as Secondary Payer statute ("MSP"), 42 U.S.C. § 1395y(b).[1] The plaintiff brings this suit under the private cause of action

---

1.   The MSP was enacted in 1980 "to curb skyrocketing health costs and preserve the fiscal integrity of the Medicare system." Fanning v. U.S., 346 F.3d 386, 388 (3d Cir. 2003). To that end, when Medicare recipients are covered by private insurance, MSP assigns primary responsibility for their medical bills to private health plans, and Medicare acts as the "secondary" payer responsible only for paying amounts not covered by the primary plan. Id. at 389.

provision of the MSP, 42 U.S.C. § 1395y(b)(3)(A), which authorizes a private right of action to recover damages owed by a primary plan.[2]

In his amended complaint, the plaintiff asserts that the defendants violated the MSP by refusing to repay Medicare for its payments made on his behalf during a period when the defendants were primarily obligated to pay his medical bills by virtue of his enrollment in their employer group health plan ("EGHP"). According to the plaintiff, "[f]rom 1992 to 2004, Medicare paid approximately $750,000 of medical expenses incurred by the Plaintiff that should have been paid by Defendants' EGHP." (Amended Complaint at ¶ 33).

Under the MSP, Medicare may make conditional payments for covered services "if a primary plan ... has not made or cannot reasonably be expected to make payment with respect to such item or service promptly." 42 U.S.C. § 1395y(b)(2)(B)(i). However, a primary plan must reimburse Medicare for such conditional payments "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(B)(ii). In the event Medicare is not reimbursed for its conditional payments, the MSP authorizes a governmental action or a private cause of action to enforce the statute's reimbursement provisions, and provides double damages against a non-compliant entity. See, 42 U.S.C. § 1395y(b)(2)(B)(iii) (authorizing action by United States), Id. § 1395(b)(3)(A) (authorizing private cause of action).

---

2. In pertinent part, 42 U.S.C. § 1395y(b)(3)(A) provides: "There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." Under the MSP, the term "primary plan" includes: "a group health plan, ... a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance". 42 U.S.C. § 1395y(b)(2)(A).

Having initiated this suit under 42 U.S.C. § 1395y(b)(3)(A), the plaintiff seeks damages for double the amount he claims the defendants are obligated to reimburse Medicare for its payments made on his behalf. The Court's federal question jurisdiction is invoked.

In response to the amended complaint, the defendants have moved to dismiss it on several grounds or alternatively, for summary judgment. In support of their motion to dismiss, the defendants argue that the plaintiff lacks standing to bring this suit, and hence, it should be dismissed for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). In addition, the defendants assert that the amended complaint fails to state a cognizable claim and should be dismissed under Fed.R.Civ.P. 12(b)(6). The movants also seek dismissal of the amended complaint on grounds that the plaintiff's MSP claim is untimely.

<u>Defendants' Rule 12(b)(1) motion to dismiss</u>:

We first address the defendants' Rule 12(b)(1) motion to dismiss on grounds that the plaintiff lacks standing. A Rule 12(b)(1) motion to dismiss "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." <u>Gould Electronics Inc. v. U.S.</u>, 220 F.3d 169, 176 (3d Cir. 2000). In reviewing a "facial attack", which is based on the legal sufficiency of the claim, the Court "must only consider the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." <u>Id.</u> Conversely, in reviewing a "factual attack", where a challenge is based on the sufficiency of jurisdictional fact, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case." <u>Carpet Group Intern. v. Oriental Rug Importers</u>, 227 F.3d 62, 69 (3d Cir. 2000).

In support of their motion to dismiss or for summary judgment, the defendants submitted the affidavit of Michael Stehura, the Fund's Director of Pension and Retiree Benefits

3

Administration, as well as several exhibits. In opposing the defendants' current motion, the plaintiff submitted his own affidavit and set of exhibits. Clearly, "a district court acting under Rule 12(b)(1) may independently evaluate the evidence regarding disputes over jurisdictional facts". CNA v. U.S., 535 F.3d 132, 140 (3d Cir. 2008). Based on the parties' submissions, we will treat the defendants' Rule 12(b)(1) motion as a factual challenge to the Court's jurisdiction. As such, "the court may consider evidence outside the pleadings." Gould Electronics, supra, 220 F.3d at 176.

In support of their motion to dismiss for lack of standing, the defendants aver that the plaintiff has not set forth facts showing he suffered an injury. That is, the defendants argue that while the plaintiff insists Medicare paid $750,000 in medical bills on his behalf, he has not shown that he personally incurred any costs for his medical treatment, or currently owes money for medical services, or has otherwise been harmed.

The United States Supreme Court has outlined the constitutional standing requirements as follows:

> First, the plaintiff must have suffered an "injury in fact"-- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations omitted).

Notably, the MSP is not a *qui tam* statute. See, Vermont Agency of Natural Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 768 and n.1 (2000) (listing bona fide *qui tam* statutes,

which does not include the MSP); accord, Woods v. Empire Health Choice, 574 F.3d 92, 98-101 (2d Cir. 2009) (holding that the MSP does not authorize a *qui tam* action) (citing cases).³ In Woods, the Court explained that the MSP's private cause of action provision, 42 U.S.C. § 1395y(b)(3)(A), "does not create a *qui tam* action", Id. at 101; rather, it "enables a private party to bring an action to recover from a private insurer only where that private party has itself suffered an injury because a primary plan has failed to make a required payment to or on behalf of it." Id.

Here, in opposing the defendants' motion to dismiss, the plaintiff has submitted an affidavit with supporting exhibits which show he is bringing this suit to vindicate his personal rights concerning conditional payments made on his behalf by Medicare that are subject to reimbursement. For instance, the plaintiff asserts that on October 22, 1981, he sustained serious injuries in a work-related motor vehicle accident, for which he received workers' compensation benefits from his employer, defendant U.S. Steel (Plaintiff's affidavit at ¶¶ 3-4). At the time of his accident and thereafter, the plaintiff received health insurance benefits from U.S. Steel under an EGHP funded by it and administered by the defendant Fund (Id. at ¶ 6). In 1986, the plaintiff was contacted by U.S. Steel's Manager of Workers Compensation, Robert Wilson, who advised him that U.S. Steel intended to close its Duquesne Plant where he worked, and that he should apply for disability retirement, which the plaintiff did (Id. at ¶ 5). In 1987, the plaintiff was awarded Social Security disability benefits (Id. at ¶ 7).

---

3. "*Qui tam*" comes from the Latin phrase "who pursues this action on ... the King's behalf as well as his own." Vermont Agency, supra, 529 U.S. at 768, n.1. A *qui tam* statute authorizes a private person, known as a "relator", to commence suit on behalf of the government and to share in any financial recovery. Woods, supra, 574 F.3d at 97. "*Qui tam* plaintiffs, even if not personally injured by a defendant's conduct, possess constitutional standing to assert claims on behalf of the Government as its effective assignees." Id. at 97-98, citing Vermont Agency, 529 U.S. at 773-74.

The plaintiff asserts that in 1989, U.S. Steel's benefits office counseled him to apply for coverage under Medicare Part B, but he was turned away by the local Social Security office, as he was already covered by his EGHP (Id. at ¶ 8). In 1992, the plaintiff was again counseled by U.S. Steel's benefits office to apply for Medicare Part B, and this time, his application was accepted, and he was enrolled in Medicare Part B (Id. at ¶ 9). From 1992 to 2004, Medicare paid approximately $750,000 of medical expenses incurred by the plaintiff or his family (Id.).

In 1994, Robert Wilson contested the plaintiff's continuing disability and threatened to file a petition to terminate or suspend his workers' compensation benefits; the plaintiff then negotiated a commutation settlement of his work-loss benefits over 500 weeks (Id. at ¶ 10). Significantly, on or about June 1, 2009, the plaintiff received correspondence from the Medicare Secondary Payer Recovery Contractor ("MSPRC"), notifying him of Medicare's "priority right of recovery" for conditional payments of $71,765.31 made on his behalf (Id. at ¶ 14). In pertinent part, the MSPRC correspondence informed the plaintiff:

> ... Conditional Medicare payments have been made related to your workers' compensation claim. These conditional payments are subject to reimbursement to Medicare from proceeds received pursuant to a workers' compensation settlement, judgment, award, or recovery... However, we ask that you refrain from sending any monies to Medicare prior to your submission of settlement/resolution information and receipt of a demand/recovery calculation letter from our office...
>
> Currently, Medicare has paid $71,765.31 in conditional payments related to your claim.
>
> Please be advised that we are still investigating this matter to

obtain any other outstanding Medicare conditional payments...[4]

The plaintiff asserts that following the MSPRC correspondence, he obtained a copy of a medical bill for $491,902.46 from UPMC Shadyside for his heart surgery that was billed to, and paid by Medicare (Plaintiff's affidavit at ¶ 14). The plaintiff contends that the defendants have made no payment to the United States on his behalf in contravention of the MSP (Amended Complaint at ¶¶ 36-37).

Based on the foregoing, the plaintiff has standing to brings this suit, as he does so to vindicate his own interests concerning unresolved conditional payments made on his behalf by Medicare that he claims the defendants must repay. Accordingly, the defendants' Rule 12(b)(1) motion to dismiss will be denied.

Defendants' Rule 12(b)(6) motion to dismiss or for summary judgment:

The defendants also move to dismiss the amended complaint for failure to state a cognizable claim under Rule 12(b)(6) or, in the alternative, for summary judgment. Pursuant to Fed.R.Civ.P. 12(d), we will treat this motion as one for summary judgment.

Rule 12(d) provides that if matters outside the pleadings are presented to the Court and not excluded on a Rule 12(b)(6) motion, the motion must be treated as one for summary judgment under Rule 56, and the parties must be given a reasonable opportunity to present material that is pertinent to the motion. Fed.R.Civ.P. 12(d). Under Rule 12(d), a Court properly converts a motion to one for summary judgment if: (1) the materials submitted required conversion, and (2) the parties had adequate notice of an intention to convert the motion. Phat Van Le v. Univ. of Medicine &Dentistry of N.J., 2010 WL 1896415, *4 (3d Cir., May 12, 2010),

---

4. See, Exhibit 8 to the plaintiff's affidavit.

citing In re Rockefeller Ctr. Prop., Inc. Secs. Litig., 184 F.3d 280, 287 (3d Cir. 1999). Both requirements are satisfied here. First, the parties submitted affidavits and exhibits relevant to the defendants' current motion which were outside the pleadings; consideration of these materials require conversion of the motion to dismiss. Having already considered some of those documents in assessing the defendants' Rule 12(b)(1) motion, we will not exclude the materials in deciding this motion. As for notice, we issued an Order on August 27, 2010, apprising the parties that the motion to dismiss may be treated as one for summary judgment and allowing the plaintiff 14 days to submit relevant materials opposing the motion (Document No. 9). This constituted adequate notice, as at least 10 days notice must be given before converting a Rule 12(b)(6) motion. Phat Van Le, supra, 2010 WL 1896415, at *4, citing Crown Central Petroleum v. Waldman, 634 F.2d 127, 129 (3d Cir. 1980). In response to the notice Order of August 27, 2010, the plaintiff timely submitted his affidavit and exhibits.

Under Rule 56, summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). Having reviewed the parties' submissions, it appears that the plaintiff cannot prevail on his MSP claim, as he is a retiree, not an active employee.

Importantly, the MSP only applies to active employees, not retirees. Hammack v. Baroid Corp., 142 F.3d 269, 270-71 (5th Cir. 1998) (citing cases); Philippus v. Aetna Life Ins. Co., 2010 WL 3075485, *5 (D.Colo., June 10, 2010) (the MSP does not apply to former employees); Coram Healthcare Corp. v. Cigna, 2002 WL 32910044, *13, n.31 (S.D.N.Y., July 24, 2002) (the MSP "only gives express legal rights to active and current employees"); accord, Santana v.

8

Deluxe Corp., 12 F.Supp.2d 162, 173 (D.Mass. 1998). That is because the MSP only prohibits private insurers from designating Medicare as the primary payer for individuals having "current employment status". Harris Corp. v. Humana Health Ins., 253 F.3d 598, 601 (11th Cir. 2001); also see, 42 U.S.C. §§ 1395y(b)(1)(A)(i), 1395y(b)(1)(B)(i). Under the MSP, "[a]n individual has 'current employment status' with an employer if the individual is an employee, the employer, or is associated with the employer in a business relationship." 42 U.S.C. § 1395y(b)(1)(E)(ii).

Here, the record shows that the plaintiff is a retiree, not a current employee of U.S. Steel. As set forth in the affidavit of Michael Stehura, Director of the Fund's Pension and Retiree Benefits Administration, the plaintiff began working for U.S. Steel on August 5, 1968, and on October 22, 1981, he suffered a work-related injury that prevented him from working; the plaintiff subsequently received workers compensation benefits (Stehura affidavit at ¶ 4). In 1986, while still receiving workers compensation benefits, the plaintiff elected to retiree from U.S. Steel effective June 30, 1986, and he submitted an Application for Retirement Benefits to the Fund (Id. at ¶ 5).[5] The plaintiff elected to retiree under a "permanent incapacity" class of retirement covered by the 1980 Pension Agreement between U.S. Steel and the United Steelworkers of America (the "Pension Agreement") (Id. at ¶ 6).[6]

The plaintiff's retirement benefits commenced on July 1, 1986 (Id. at ¶ 5). Since July of 1986, the plaintiff has received a monthly pension payment in accordance with the terms of the Pension Agreement (Id. at ¶ 9). Pursuant to Section 5 of the Pension Agreement, the

---

5. A copy of the plaintiff's Application for Retirement Benefits, which was completed on August 19, 1986, is attached as Exhibit A to Mr. Stehura's affidavit.

6. A copy of pertinent provisions of the Pension Agreement is attached as Exhibit B to Mr. Stehura's affidavit.

plaintiff's retirement brought an end to his continuous service (Id.). Thus, the plaintiff's active employee insurance coverage ceased on June 30, 1986, the end of the month in which his retirement occurred (Id. at ¶ 10). The plaintiff was subsequently enrolled for Company-paid hospital and physicians' services benefits under The Program of Hospital-Medical Benefits for Eligible Pensioners and Surviving Spouses (Id. at ¶11).

The plaintiff acknowledges that the MSP does not apply to retirees (Opposition Memorandum at p. 10). Thus, although he produced evidence showing that he applied to the Fund for retirement benefits and receives such benefits[7], the plaintiff insists he is an active employee for purposes of the MSP based on factors pertaining to employee status listed in Section 3492 of the Medicare Intermediary Manual. The plaintiff is mistaken.

The term "employee" is defined in Section 3492 of the Manual as follows:

> 4. <u>Employee</u>.-- An employee is an individual who is actively working for an employer or, since disabled persons are not usually working, a person whose relationship to an employer is indicative of employee status. Whether or not such a person is an employee is determined on the basis of the individual's relationship to the employer. The question to be decided is whether the employer treats a disabled individual who is not working as an employee, in light of commonly accepted indicators of employee status, rather than whether the person is categorized in any particular way by the employer. In general, an individual who is not actively working may be considered to have employee status if the relationship is such that:
>
> [1]. The individual is receiving payments from an employer which are subject to taxes under the Federal Insurance Contributions Act ["FICA"] or would be subject to them except that the employer is not required to pay such taxes under the Internal Revenue Code.
>
> [2]. The individual is termed an employee under State or

---

7. See, Exhibits 3 and 4 attached to the plaintiff's affidavit.

Federal law, or in accordance with a court decision.

[3]. The employer pays the same taxes for the individual as he pays for active, working employees.

[4]. The individual continues to accrue vacation time or receives vacation pay.

[5]. The individual participates in an employer's benefit plan in which only employees may participate.

[6]. The individual has rights to return to duty if his/her condition improves.

[7]. The individual continues to accrue sick leave.

Medicare Intermediary Manual, Part 3, Section 3492.

According to the plaintiff, the first and third factors listed above are indicative of his employee status, as payments he received from the defendants (reported on Form 1099-R) were subject to FICA taxes. However, as the defendants explain, Form 1099-R (Distributions from Pensions, Annuities, Retirement or Profit-Sharing Plans, etc.) is used to report pension distributions, and while such distributions may constitute taxable income, they are not subject to FICA taxes. Indeed, Internal Revenue Service instructions for Form 1099-R specify that payments subject to withholding of social security and Medicare taxes (i.e., FICA taxes) should be reported on Form W-2, Wage and Tax Statements, not on Form 1099-R.[8] With respect to FICA, the term "wages" specifically excludes payments from a qualified pension plan. See, 26 U.S.C. § 3121(a)(5). Since payments to active employees are reported as wages (subject to FICA taxes) on Form W-2, the Form 1099-R statements received by the plaintiff evince that the

---

8. See, p. 1 of 2010 Instructions for Forms 1099-R and 5498, attached to defendants' reply brief.

defendants treat him as a retiree, not an active employee.

Therefore, since no genuine issue of material fact exists as to the plaintiff's employment status, and for reasons discussed above, the defendants are entitled to summary judgment.[9] An appropriate Order will be entered.

---

[9]. Based on this ruling, we make no findings on other arguments made by the defendants in support of their current motion.

O R D E R

AND NOW, this 29th day of October 2010, for the reasons set forth in the Court's Memorandum Opinion issued this date,

IT IS ORDERED that the defendants' motion to dismiss the amended complaint or, in the alternative, for summary judgment (Document No. 7), treated as a motion for summary judgment, is granted.

                    s/ ROBERT C. MITCHELL
                    United States Magistrate Judge